**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                     :

MANUEL RIOS,                 :
              Plaintiff,           :               CIVIL ACTION
                                       :
           v.                         :
MICHAEL J. ASTRUE,       :
Commissioner of Social Security,    :
                 Defendant.       :               No. 09-5004
_____ :

**MEMORANDUM RE: SOCIAL SECURITY APPEAL**

**Baylson, J.**                                                       **September 30 , 2010**

Plaintiff, Manuel Rios, seeks judicial review of the decision by the Commissioner of the

Social Security Administration (the "Commissioner") denying his application for Social Security

Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") under Titles II

and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-83(c) (2000). Jurisdiction is

established under § 1383(c)(3), which incorporates § 405(g) of the Act. 42 U.S.C. §§ 405(g),

1383(c)(3). After careful and independent consideration of the matter, and for the following

reasons, the Court will affirm the decision of the Administrative Law Judge ("ALJ"), deny Rios's

request for benefits or a new hearing, and dismiss the complaint.

**I.**         **Background and Procedural History**

Rios applied for social security and disability benefits on May 1, 2007. (R.119-133) He

was born on June 1, 1957, and was forty–seven years, 11 months, on May 1, 2005, the onset date

of his alleged impairment. (R.19.) Rios has completed schooling through the ninth grade,

speaks and reads Spanish, and has limited reading and writing facility in English. (R.23.) His

relevant work experience is as a truck driver. (R.23 and 147.) Rios alleges disability due to

major depressive disorder, anxiety, and shoulder injury, specifically a chronic acromioclavicular separation of the right shoulder with coracoclavicular ligament calcification/ossification.  (R146, 188, 290, 372.)

The Social Security Administration denied Rios's application on December 23, 2005.  (R.51-60.), and Rios timely filed a request for a hearing by an ALJ.  (R.61-69.)  ALJ Christine McCafferty held a hearing on February 18, 2009.  (R.26-47).

At the hearing, Rios testified that he has not worked since 2005 because he does not "feel good."  (R.32.)  Rios described his illness as causing an inability to concentrate and a lack of desire to engage in any activities.  (R.32-34.)  He related that he had been once hospitalized because of suicidal feelings, but could not recall when that occurred. (R.33.)   He stated that he rarely leaves the home he shares with his sister, and, instead, remains inside all day and watching television.  (R.36.)  He does not do any chores in the home because he does not feel like doing anything, although he once helped much more in his former home in Connecticut.  (R.36-39.)  He informed the ALJ that a friend helped him take public transportation to the hearing because Rios was "scared" to take the train alone.  (R.32.)  A vocational expert testified, as well.  (R45-46.).

The ALJ denied Rios's claim in a written decision of  March 3, 2009, holding that Rios is not disabled under the Act.  (R.11-25).  The ALJ found that Rios "meets the insured status requirements" of the Act, and "has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date."  (R.19)  The ALJ then determined Rios to suffer from "an affective depressive disorder," which the ALJ concluded to be a severe impairment that "causes significant limitation in [Rios's] ability to perform basic work activities."  (R.19).  However, the ALJ determined Rios's impairment not to meet or medically equal "one of the listed impairments in

20 CFR Part 404, Subpart P, Appendix 1." (R.20.) While the ALJ found Rios's impairment to meet "some of the criteria of part 'A' of Listing 12.05 [Affective Disorders,]" the ALJ concluded Rios could not establish "the functional limitations required by part 'B' of the listing [or] the criteria required by part 'C' of the listing." (R.20.)

The ALJ defined Rios to be a "younger individual," based on Rios's age at the alleged disability onset date, see 20 C.F.R. § 404.1563, and to have limited education, but found "[t]ransferability of skill" to be immaterial to the determination of disability. (R.23.) The ALJ further determined Rios to have the "residual functional capacity to perform a full range of work at all exertional levels." (R.22.) The ALJ did recognize that Rios's symptoms related to depression limited his "nonextertional" capacity to perform "simple, routine tasks with only occasional changes in work settings and moderate limitations in concentration, persistence or pace." (R.21-22.)[1] However, the ALJ declined to credit Rios's allegations as to the "severity of his impairments and their impact on his ability to work" beyond the expressed nonexertional limitations. (R.23.) The ALJ did recognize that Rios "alleged having a shoulder separation and visual difficulties," but noted that Rios's attorney "did not allege any physical work preclusive limitations" and that Rios has not sought ongoing treatment for either condition. (R.20.)

The ALJ agreed with the testimony of the vocational expert that Rios's medically

---

[1]"Limitations are classified as exertional if they affect [a claimant's] ability to meet the strength demands of jobs." Curry v. Astrue, No. 07-5237, 2009 WL 188028, AT *7 (E.D.Pa 2009) (quoting 20 C.F.R. § 416.969a(a)). "Limitations or restrictions which affect [one's] ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." Id.

determinable impairment precluded Rios from returning to his "past relevant work" as a truck driver. (R.23.) However, with consideration given to Rios's "age, education, work experience, and residual functional capacity," the ALJ determined Rios to be "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R.24.) The ALJ concluded "a finding of 'not disabled' [to be] therefore appropriate" for Rios. (R24.)

Rios timely requested, but was denied, review by the Appeals Council, making the ALJ's decision final on August 26, 2009. (R.1-6.) On November 3, 2009, Rios filed this action requesting review of the denial by the ALJ of Rios's disability benefits.

## II.    Parties' Contentions

### A.    Rios's Objections

Rios contends that the ALJ neglected to "mention or adequately discuss" (1) Rios's medical records from Northeast Community Mental Health Center and (2) relevant evidence of Rios's shoulder injury. (Pl's Br. 4.) Rios argues both omissions to be reversible error. (Pl's Br. 4.) Rios next contends that the ALJ neglected to properly credit Rios's testimony, particularly regarding his "lack of interest in all activities," which Rios avers is corroborated by his medical records. (Pl's Br. 6.) Rios concludes that properly credited testimony, in combination with the medical evidence, would have supported a finding that Rios meet the requirements of Listing 12.04. Finally, Rios contends that the ALJ improperly applied the Medical Vocational Guidelines in her evaluation of his age and in the transferability of his skill, in light of his alleged shoulder injury. 20 C.F.R. Pt. 404, Subpart P, App.2.

### B.    The Commissioner's Response

The Commissioner responds that, while the ALJ may not have explicitly addressed the

NCMHC records, Rios has not met his burden of showing harmful error. (Def.'s Resp. 11-12). The Commissioner contends that the ALJ's step three analysis as to the severity of Rios's impairment and her conclusion that Rios's depression and anxiety did not meet or equal the requirements of Listing 12.04 were explained sufficiently and adequately supported by substantial evidence. (Def.'s Resp. 4-9.) The Commissioner further responds that Rios provided no medical evidence to support his allegation of a totally debilitating mental impairment, in the face of medical assessments finding Rios to be only "moderately limited" and, thus, the ALJ's failure to credit Rios's allegation was proper. (Def.'s Resp. 10-11.) The Commissioner contends the ALJ's analysis regarding Rios's shoulder injury was similarly supported by substantial evidence, as Rios waived the issue in the hearing and medical evidence demonstrated Rios to have "full range of bilateral shoulder motion." (Def.'s Resp. 13). Finally, the Commissioner contends that the ALJ did not, in fact, apply the Medical Vocational Guidelines in determining Rios's capacity to work, but, instead, relied on the vocational expert's testimony in response to a properly worded hypothetical. (Def.'s Resp. 14).

## III.  Legal Standards

### A.  Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.

### B.  Standard of Review

The Social Security Act provides for judicial review of any "final decision of the

Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. However the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. (emphasis added). Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'" Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). This Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C.   Disability Claims Analysis

To be defined as disabled under the Social Security Act, a claimant "must demonstrate some 'medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period.' " Burnett v. Commissioner  of Social Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422 427  (3d Cir. 1999); see also 42 U.S.C. § 423(d)(1). The Act requires claimants to establish that their "physical or mental impairment or impairments are of such severity that [they are] not only

unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" Id. (citing Plummer, 186 F.3d at 427-28 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner has promulgated a five-step sequential evaluation for determining whether a claimant is eligible for benefits, set forth in 20 C.F.R. § 404.1520. First, the Commissioner must consider a claimant's current work activity and deny the claim if a claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b), 416.920(b). Second, the Commissioner must determine whether the impairment or combination of impairments suffered by a claimant are severe. 20 C.F.R. § 404.1520(c), 416.920(c). If a claimant fails to show either that the impairments are "severe" or do not meet the duration requirement in 20 C.F.R. § 404.1509, the Commissioner must deny the claim. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Three, the Commissioner must evaluate whether a claimant's impairment(s) meets or equals the severity of one of the impairments in the Listing of Impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d), 416.920(d). If so, a claimant is eligible for disability benefits. Id.

Fourth, if the Commissioner does not approve the claim under step three, the Commissioner must consider whether a claimant retains the residual functional capacity ("RFC") to meet the physical or mental demands of past relevant work. 20 C.F.R. § 404.1520(e)-(f), 416.920(e)-(f). A claimant must show an inability to resume past relevant work. Burnett, 220 F.3d at 118. Finally, if a claimant meets this burden, "the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." Burnett, 220 F.3d at 118, 20 C.F.R. § 404.1520(e)-(f),

416.920(e)-(f).  In this final step, the Commissioner must approve the claim unless the

Commissioner can show that other jobs "exist in significant numbers in the national economy

which the claimant can perform," consistent with the claimant's impairments, age, education, past

work experience, and RFC.  Burnett, 220 F.3d at 118-19, 20 C.F.R. § 404.1520(f), 416.920(f).

## IV.    Discussion

### A.    Evaluation of NCMHC Records

Rios contends the ALJ's failure to consider the NCMHC records tainted the ALJ's step

three  analysis of the applicability of Listing 12.04.  (Pl's Br. 4.)  Rios avers these records,

including two biopsychological evaluations from 2007 and 2008 that resulted in Global

Assessment of Functioning ("GAF") scores of 50, provide evidence of Rios's depressed

condition.  (Pl's Br. 4.)  Rios contends the ALJ should have considered these scores in evaluating

the severity of his condition, particularly given the "great weight" afforded a 2007 GAF score of

50-55 assigned to Rios by the consultative psychological examiner, who evaluated Rios only

once. (Pl's Br. 4-5.)   Rios avers that these records provide sufficient evidence to demonstrate he

"meets or medically equals" parts "A" and "B" of Listing 12.04.  (Pl's Br. 8.)   He further avers

that the records support a finding that his "mental health disease process has more than minimally

interfered with his ability to perform any substantial gainful activity," by which Rios presumably

contends that he has met the requirements of part "C" of Listing 12.04.  (Pl's Br. 8.)

#### 1. NCMHC Records

The Third Circuit has recognized " a particularly acute need for an explanation of the

reasoning behind the ALJ's conclusions" in light of  "conflicting probative evidence in the record,

. . . and will vacate or remand a case where such an explanation is not provided."  Fargnoli v.

Massanari, 247 F.3d 34, 42 (3d Cir. 2001). Thus, it is well established that an ALJ has an obligation to discuss not only the evidence in support of her result, but that evidence which she has rejected. See e.g. Fargnoli, 247 F.3d at 43; Burnett, 220 F.3d at 121; Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In doing so, the ALJ must provide some basis for rejecting the latter. Plummer, 186 F.3d at 429. The "uniform obligation of the ALJ . . . is to provide an adequate basis so that the reviewing court can determine whether the administrative decision is based on substantial evidence." Cotter, 642 F.2d at 706. "'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record." Id.

The ALJ did not cite to any relevant objective medical evidence in determining Rios's "affective depressive mood disorder" to be a "severe impairment" or in concluding that his "psychological impairment may meet some of the criteria of part 'A' of Listing 12.04." (R.19-20. However, the ALJ relied upon examinations by two medical experts in assessing both satisfaction of parts "B" or "C" of Listing 12.04 and Rios's RFC. The ALJ relied, first, upon a State Agency psychological consultant who found Rios to be only "moderately limited" in a series of relevant areas, such as "ability to understand, remember and carry out detailed instructions" and ability to "maintain attention and concentration for extended periods of time." (R.22.) Second, the ALJ relied upon a consultative psychological examination by Dr. Gene Corbman, who determined Rios to have "Major depressive disorder, depressed, or moderate severity without psychotic features." (R.22.) Dr. Corbman gave Rios a GAF score of between 50 and 55. (R.22.) The ALJ opinion explained the difference between GAF scores of 50 and 51-55 as indicating "serious" and "moderate" symptoms, respectively. (R.22.) The ALJ concluded by noting that Dr. Corbman found Rios to have "only 'slight' to 'moderate' limitations in all work-related areas." (R.22.)

The ALJ made no mention of Rios's treatment at NCMHC. (R.191-208, 275-355, 365-415). As Rios points out in his brief, an initial March 21, 2007 biopsychsocial evaluation conducted at NCMHC relates the range of Rios's symptoms as "very sad most of the time," with "markedly diminished interest in most activities" and "difficulty with concentrating [on] anything." (R. 275-6. ) The initial evaluation and re-evaluations of September 25, 2008, both diagnose Rios with "major depressive disorder," and both reports describe Rios's "insomnia;" "low appetite;" "[f]eelings of worthlessness;" "isolation;" and difficulty in engaging in daily activities. (R.276, 285, 371-2.) Both evaluations also depict Rios often "tearful," but a "client with good hygiene, well groomed, casual dress, cooperative, with coherent speech, and appropriate affect," who is able to "contract for safety." (R.200; 373-74) The therapist session notes additionally relate plans by Rios to "repeat a positive state" and engage in "positive activities." (R.299-355.) Furthermore, while Rios has been consistently prescribed Prozac and Remeron, a NCMHC psychiatrist indicated in February 2008 that "psycho tropics" were not "needed at this time." (R.209, 292-94.)

Rios cites numerous Third Circuit cases for the proposition that a failure to "discuss all of the medical evidence is reversible error." (Pl's Br. 3-4). The ALJ's failure to discuss the NCMHC records appear to this Court an insufficient basis upon which to remand this case. While an ALJ must facilitate appellate review by discussing <u>contradictory</u> medical evidence and providing a reason for its rejection, <u>see e.g.</u> <u>Burnett</u>, 220 F.3d at 121-122, the same rationale does not apply to an ALJ's rejection of duplicative or irrelevant medical evidence. In <u>Burnett</u>, the Third Circuit contrasted the list of evidence discussed by the ALJ with unmentioned "contradictory, objective medical evidence," remanding to the ALJ to review "all of the pertinent

medical evidence." Id.  Nothing in the NCMHC records contradicts the findings made by the

State agency examiner or Dr. Corbman.  The fact that Rios sought treatment at the Center and the

symptoms cataloged in the NCMHC records themselves only provide additional support for the

ALJ's finding of a "severe impairment" and a basis to conclude that Rios has shown "medically

documented persistence, either continuous or intermittent, of [a] depressive syndrome," required

by part "A" of Listing 12.04.  20 C.F.R. Part 404, Subpart  P, Appendix 1.  These findings are not

in dispute, so the evidence itself is duplicative.

To establish an impairment consistent with Listing 12.04, Rios must satisfy the

requirements of both parts "A" and "B" or part "C."  Id.  The NCMHC records do not provide

sufficient evidence to satisfy the requirements of Listing 12.04 part "B," which requires Rios to

establish "(1) marked restriction of activities of daily living; or (2) marked difficulties in

maintaining social functioning; or (3) marked difficulties in maintaining concentration,

persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration."  Id.

Nor do the records provide evidence to allow Rios to satisfy the Part "C" requirement of  "a

medically documented history of a chronic affective disorder of at least two years duration with

repeated extensive episodes of decompensation or a residual disease process that had resulted in

such marginal adjustments that any slight change in demands would result in further

decompensation or a history of more than one year's inability to function outside a highly

supportive living arrangement."  Boniella v. Comm'r of Soc. Sec., No. 07-5237, 2009 WL

2612354,* 4 (W.D.Pa. 2009).

The NCMHC records contain one statement in a list of "Signs and Symptoms" indicating a

"markedly diminished interest in most activities."  (R.192.)  However, while evidence that Rios

-11-

has a "markedly diminished interest in most activities" may demonstrate a finding equal in severity to the requirements listed in part "B" of Listing 12.04, a "markedly diminished <u>interest</u>" cannot necessarily be equated with the types of "marked" limitations on work and daily living described in part "B."   (R.192.) (emphasis added.)  Dr. Corbman did note a "moderate to significant restriction in the claimant's daily activities and constriction in his range of interest," stating that Rios is "not functioning independently and . . . not capable of managing his own funds," all of which go unmentioned in the ALJ's decision. (R.241.)   However, that evidence is only consistent with and does not add to the evidence in the NCMHC records and part "B" requires a finding of two marked functional limitations by the ALJ.  Nothing else in the record provides that support.  Rather, the other objective medical evidence consistently points only to findings of "mild" and "moderate" limitations.  (R.20,22.)

As recognized by the ALJ, (R.22.), no objective medical evidence exists in the record to support a finding that his condition is deteriorating or has deteriorated. 20 CFR Part 404, Subpart P, Appendix 1.   Rather, the notes from Rios's NCMHC sessions consistently  depict Rios as sad and depressed, but without suicidal thoughts, signs of deteriorating condition, or need of a "highly supportive living arrangement."   (R.191-209, 275-355, 365-415.)  20 CFR Part 404, Subpart  P, Appendix 1.  The records further indicate Rios's plans to think and act positively and one psychiatrist's assessment that psychotropic medication was no longer needed.   Thus, this Court can find no evidence in the record to establish the level of "decompensation" required to meet parts "B(4)" or "C" of Listing 12.04.

## 2. GAF Scores

GAF scores are used by mental clinicians and doctors to rate the social, occupational and psychological functioning of adults. Irizarry v. Barnhart, 233 Fed. Appx. 189, 190 n.1 (3d Cir. 2007). The GAF scale, designed by the American Psychiatric Association, ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest. See Watson v. Astrue, No. 08-1858, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009). An individual with a GAF score between 51 and 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning," while a score of between 41 and 50 may indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e .g., no friends, unable to keep a job)." West v. Astrue, No. 09-2650, 2010 WL 1659712, at *4 (E.D.Pa. 2010) (quoting Debaise v. Astrue, No. 09-0591, 2010 WL 597488, at *5 n. 7 (W.D. Pa. Feb.16, 2010); Watson, 2009 WL 678717, at *5).

Pursuant to Social Security Administration rules, a claimant's GAF score is not considered to have a "direct correlation to the severity requirements." Watson, 2009 WL 678717, at *5 (quoting 66 Fed. Reg. 50746, 50764-65 (2000)). The rules still note, however, that the GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis," and is, thus, accepted as medical evidence. Id. In accordance with an ALJ's obligation to consider all evidence and provide basis for discounting that evidence she rejects, GAF scores "must be addressed by an ALJ in making a determination regarding a claimant's disability." Id. (emphasis in original) (citing Colon v. Barnhardt, 424 F.Supp.2d 805, 812 (E.D. Pa. 2006).

This Court discussed recently "the issue of whether remand is required where an ALJ fails

to address or examine GAF scores of 50 or below," noting that the issue "has been examined numerous times by courts in this district." West, 2010 WL 1659712, *4. In West, the claimant alleged that she received and submitted into evidence two GAF scores of 50 and three GAF scores of 45. Id. at 5. However, the ALJ declined to discuss each of the scores of 50 or below, which indicated serious symptoms, only mentioning the score of 55 assessed during the same time period. Id. This Court held that the ALJ's failure to "disclose any reasons for not considering the five GAF scores of 50 or below" received by the claimant required a remand "for consideration of [the claimant's] GAF scores in conjunction with the other mental health evidence in the record and their effect on her RFC." Id. at 11.

Each of the prior cases relied upon by this Court in West addressed an utter failure by an ALJ to address GAF scores at all or involved similar disparities between the GAF scores discussed by an ALJ and those which were rejected unduly or without discussion, as described in West. See, e.g., Watson, 2009 WL 678717, at *5 ("Despite these six assessments [GAF scores of 50 and 65] in the record, the ALJ's opinion provides no indication as to whether she considered these scores, or reasons for discounting their significance." ); Robleto v. Barnhart, 05-4843, 2006 WL 2818431, at *8 (E.D. Pa. Sept.28, 2006) ("While the ALJ explicitly cited the GAF score of 55 assigned to Plaintiff . . . , he failed to even mention the GAF score of 38 given to Plaintiff several months later[.]"); Dougherty v. Barnhart, No. 05-5383, 2006 WL 2433792, at *9-10 (E.D. Pa. Aug.21, 2006) "[T]he ALJ's report in this case fails to discuss any of the five GAF scores [including three scores of 40] in the record.").

This case is distinguishable from those cited above. This is not the situation described in Watson in which an ALJ fails to address a claimant's GAF scores or their significance at all. To

the contrary, the ALJ in this case did discuss a September 11, 2007 GAF score of 50-55 assessed by Dr. Corbman, noting that a GAF Score of 50 would indicate "serious symptoms," while a score of 51-55 corresponded to "only moderate symptoms." (R.22.) The ALJ's decision does fail to mention two GAF scores of 50 assessed by NCMHC on March 21, 2007, and September 25, 2008. (R.290, 372.) Of course, the ALJ would have aided review of her choice to exclude these two scores from her analysis had she provided some rationale for their omission. See Cotter, 642 F.2d at 706. However, their absence from her decision does not present the same issues of concern as were raised in West, or Robleto. In those cases, the ALJ appeared to be blatantly "cherry-picking" higher scores to use them "as part of the foundation for [a] determination that the claimant was not disabled." Dougherty, 2006 WL 2433792, at *10 n.4. In the instant case, the ALJ's omission appears to have been harmless error. See Purnell v. Astrue, 662 F. Supp. 2d 402, 415 (E.D. Pa. 2009) (in affirming the ALJ's decision as to mental impairments, concluding omission of GAF score of 50 from ALJ's discussion to be harmless error where claimant fails to "explain how [the] GAF score determination would have itself satisfied the Listing's requirements given that [the physician's] determinations of [claimant's] limitations were no greater than moderate in any category."). Rather than contradicting the evidence provided by Dr. Corbman's evaluation, two additional GAF scores of 50 only corroborate his findings and would have added little to the ALJ's prior analysis regarding the severity of Rios's impairment or satisfaction of part "A" of Listing 12.04. The additional consistent scores do nothing to overcome the lack of evidence of marked limitations or periods of decompensation. This Court concludes remand for consideration of either the GAF scores or NCMHC records as a whole would be futile.

### B. Evaluation of shoulder injury findings

Rios further contends that the ALJ disregarded medical evidence of Rios's shoulder injury, particularly a finding of "oracoclavicular ligament calcification/ossification associated with the chronic acromioclaivicular separation of the right shoulder," which Rios avers was relevant in evaluating the differential diagnoses from Rios's primary physician and the medical consultant. (Pl's Br. 5). Rios contends that the ALJ's crediting of observations from "field office personnel" of Rios's range of motion occurred with no reference to the medical expertise of these personnel. (Pl's Br. 5).

The ALJ decision discusses both the February 6, 2007 examination of Rios's shoulder by Dr. Pierre Darbouze and the July 20, 2007 examination by consultant Dr. Horacio Buschiazzo. (R.22, 188, 212-13.) As noted by the ALJ, both physicians reported right shoulder and right elbow pain and an acromioclavicular separation of the right shoulder, but only Dr. Darbouze reported a limited range of motion associated with this condition. (R.22.) The ALJ further noted that Rios has sought "appropriate follow-up care and treatment" and that "field office personnel observed him to have no difficulties while at the field office." (R.22.) Without mention of the "oracoclavicular ligament calcification/ossification" found by Dr. Darbouze, the ALJ concluded that Rios's shoulder injury was not a severe impairment. (R.22, 188.)

Rios contends that the ALJ's omission constitutes a failure to discuss relevant evidence. While it is true that the two physicians came to differing conclusions regarding Rios's shoulder range of motion, resolution of that issue would not have changed the outcome of this case. Medical evidence regarding Rios's shoulder is theoretically relevant to two aspects of the ALJ's analysis: (1) the existence of a severe impairment and (2) the presence of physical limitations affecting Rios's capacity to perform other available work in the national economy. See 20 C.F.R.

§§ 404.1520(c) and (f), 416.920(c) and (f).  Rios conceded on two occasions at the hearing that his shoulder injury did not pose any physical limitations, (R.28-29, 40), and concedes again in his brief that the injury does not "meeting a listing" and is, therefore, "not in and of itself disabling." (Pl's Br. 3.)  Thus, this issue is not in dispute.  The only other purposes for which evidence of Rios's shoulder injury would be relevant would be in an analysis of the Medical Vocational Guidelines or in presenting a hypothetical to a vocational expert regarding Rios's RFC.  Here, again, Rios appears to have conceded the issue.  On cross examination of the vocational expert, the hypothetical question presented by Rios's attorney to the expert made no mention of the shoulder injury, but in fact explicitly acknowledged a lack of physical limitations, echoing the attorney's two similar statements made earlier in the hearing.  (R.46.)

As the Supreme Court recently decided in Shinseki v. Sanders, 129 S.Ct. 1696, 1699 (2009), "[t]he burden of showing harmfulness is normally on the party attacking an agency's determination."  Rios contends that without fully considering the medical evidence, the ALJ did not make a reasoned determination and that, had she done so, she would have determined Rios to be "limited to light exertion jobs."  (Pl's Br. 3.)  In light of the concessions made by Rios that he was not, in fact, limited to "light exertion jobs" and the substantial evidence supporting the ALJ's findings regarding the non-severity of Rios's shoulder injury (R.211, 224), this Court cannot conclude that a more thorough look at the medical evidence would have changed the ALJ's findings.  Thus, this Court finds that Rios has failed to meet his burden of showing any harm caused by the ALJ's failure to fully address any evidence regarding that injury.

**C.  Evaluation of Rios's Credibility**

Rios contends that the ALJ neglected to properly credit Rios's testimony, in light of Rios's

medical records.  (Pl's Br. 6).   Rios contends that his testimony regarding his  "complete lack of interest" in engaging in any activities is corroborated by medical records, as are his "consistent anhedonia, social isolation, and inability to concentrate."  (Pl's Br. 6,8.)  Rios contends that the combination of his own testimony and the medical records establish sufficient evidence to meet Listing 12.04.  (Pl's Br. 8.)  Rios argues that the ALJ should have given this evidence "great weight" as Rios avers that they are not contradicted by medical evidence.  (Pl's Br. 8.)

The ALJ is "empowered to evaluate the credibility of witnesses," including statements and complaints by claimants.   Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.1983) (citing Smith v. Califano, 637 F.2d 968, 972  (3d Cir. 1981)).  As such, a credibility determination must be considered conclusive if based on substantial evidence.  See Richardson v. Perales, 402 U.S. 389, 390, (1971) (citing 42 U.S.C. § 405(g)).  When making credibility findings, the ALJ must indicate which evidence she rejects and which she relies upon as the basis for her findings.  See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir.1999).  These findings must be specific enough to allow a reviewing court the opportunity to ascertain which evidence was accepted, which was rejected, and the reasons why.  See Cotter, 642 F.2d at 705.

An ALJ must seriously consider a claimant's subjective symptoms, which may not be discounted if objective evidence demonstrates a condition that could reasonably produce such symptoms, even without objective evidence of the symptoms themselves.   See e.g. Chrupcala v. Hecker, 829 F.2d 1269, 1275-76  (3d Cir. 1987).  If medical evidence supports a claimant's subjective complaints, the ALJ must give those complaints "great weight" and may not discount them as not credible without pointing to contrary medical evidence.  See Mason v. Shalala, 99 F.2d 1058, 1067-68  (3d Cir. 1993).  In Mason, the Third Circuit held the ALJ to have improperly

-18-

rejected medical evidence and concluded the ALJ's credibility determination regarding the claimant's symptoms could not stand.  Id.  The Third Circuit found that "[h]ad the ALJ given due consideration [to the medical evidence,] the ALJ's analysis of [the claimant's] complaints of pain might have been significantly affected."  Id.

The ALJ credited Rios's testimony to an extent, finding that he "does have some symptoms and limitations of function" caused by his "medically determinable impairments." (R.23.)  However, the ALJ declined to credit Rios's "statements concerning the intensity, persistence and limiting effects of these symptom."  (R.23.)  Thus, the ALJ found Rios to be "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R.23.)

This Court finds that the ALJ's conclusions are based on ample objective data in the record including the opinions of two psychological consultants, who determined Rios's symptoms to range from moderate to severe, but with only slight to moderate work-related limitations. (R.22.)  As discussed above, the medical records supplied by NCMHC only corroborate the findings of the psychological consultants and did not support a finding of complete incapacitation or inability to perform any gainful activity.  As the ALJ noted, the medical records "do not support [Rios's]  level of inactivity around the house or his alleged inability to go out alone, and "no medical professional has ever declared that the claimant has any work preclusive condition." (R.23.)  The Court has not found, and Rios has not identified, any medical evidence in the record to the contrary or any evidence to support a finding of "repeated episodes of decompensation or of residual disease."   20 C.F.R. Pt. 404, Subpart P, App.2.  The Court believes the ALJ's credibility determination in this regard was adequately supported, that discussion of the medical records

would not have "significantly affected" her analysis, <u>Mason</u>, 99 F.2d at 1067-68 , and sees no error in the ALJ's decision not to credit Rios's testimony regarding the level of severity of his impairments or his ability to return to work.

### D. <u>Applicability of Medical Vocational Guidelines</u>

Rios argues that the ALJ improperly applied the Medical Vocational Guidelines to his case. He contends that the ALJ made a determination of Rios's age category based only on his age at the alleged onset date, without taking into account Rios's age at the time of the hearing, which Rios contends would have put him in a different category. (Pl's Br. 3.)

Prior to 1978, the Secretary of Health and Human Services "relied on vocational experts to establish the existence of suitable jobs in the national economy for all claimants (the fifth step of the inquiry)." <u>Sykes v. Apfel</u>, 228 F.3d 259, 263 (3d Cir. 2000). To improve the "efficiency and uniformity" of this analysis, the Secretary promulgated Medical Vocational Guidelines, known as the "grids," which address the fifth step through use of a matrix. <u>Id.</u> "Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion that work exists that the claimant can perform." <u>Sykes</u>, 228 F.3d at 263.

The grids did not replace the role of a vocational expert. The Third Circuit has articulated that where the grids do not cover a claimant's situation, the ALJ must consider additional limitations, rather than applying the guidelines mechanistically. <u>See Mason</u>, 994 F.2d at 1064. In fact, the Third Circuit requires the guidance of a vocational expert or similar evidence where the ALJ recognizes a claimant's impairment to impose nonexertional limitations. <u>See Allen</u>, 417

F.3d at404.[2]  An ALJ may rely on the testimony of a vocational expert in response to a hypothetical as "substantial evidence" as long as that hypothetical "fairly set[s] forth every credible limitation established by the physical evidence." Plummer, 186 F.3d at 431.

20 C.F.R. § 404.1563 sets out the perimeters by which an ALJ considers a claimant's age, stating that an individual under 50 is considered a "younger person," while a claimant between the ages of 50 and 59 is a "person closely approaching advanced age."  20 C.F.R. § 404.1563(c) and (d).  "The choice of an age category [can have] a decisive impact on the disability determination." Kane v. Heckler, 776 F.2d 1130, 1133  (3d Cir. 1985) (remanding to ALJ for consideration of transferability of skills based on claimant's age and in light of regulation requiring that grids not be applied mechanistically in borderline situations).  Here, the ALJ's finding that Rios was a "younger individual," (R.23.), did not have a decisive effect.  Having found Rios without any exertional limitations, the ALJ determined that section 204.00 of the grids "provides a framework for decision making[.]"  (R.24.)  Section 204.00 states that "an impairment which does not preclude heavy work (or very heavy work) . . . generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." Consistent with this framework, the ALJ found "[t]ransferability of skill" to be immaterial to the determination of disability.  (R.23.)  Thus, had this been purely an issue of exertional limitations, placing Rios in an older age category would not have precluded the ALJ from finding him to be "not disabled."

_____

[2] An ALJ may, in the alternative, "[p]rovide notice [of intent] to take or [take] administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational base, and allow the claimant the opportunity to respond before . . . deny[ing] the claim." Allen, 417 F.3d at 404.

The determinative facts were, instead, those related to Rios's nonexertional limitations, which required guidance from a vocational expert. See Allen, 417 F.3d at 404. Here, too, the age category assigned to Rios appears to have had no effect. Responding to questioning from the ALJ, vocational expert Steve Gumerman testified that "an individual of the claimant's age, education and work experience having the following residual functional capacity, having no physical limitations but being limited to simple repetitive tasks with only occasional changes in the work setting, having a moderate limitation in concentration, persistence in pace" could not return to Rios's past relevant work, but that other jobs exist in the local or national economy that a claimant in Rios's position could perform. (R.46.) The vocational expert further testified, in response to a question by Rios's attorney, that these same jobs would be not be available to a claimant in the above situation, but with "marked limits on concentration." (R.46.) At no point did either the ALJ or Rios's attorney specify that the vocational expert should consider Rios's age category or his age at onset date, rather than his age at the hearing date.

The Act does not dictate to the ALJ "particular language or . . . a particular format" for analysis. Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ must only demonstrate "sufficient development of the record and explanation of findings to permit meaningful review." Id. Rios has not challenged whether the content of the hypothetical posed to the vocational expert includes all relevant limitations, Rutherford, 399 F3d at 554 n. 8, and, thus, its sufficiency as "substantial evidence" is not in question.[3] Therefore, this Court concludes that the ALJ properly

---

[3] Rios does contends that, while Rios's shoulder injury is not a severe impairment under the Act, the ALJ should have considered the injury in determining Rios's maximum level of exertion. (Pl's Br. 3.) However, as discussed above, Rios appears to have conceded this issue at the hearing, his attorney having repeatedly confirmed with the ALJ that Rios had no physical limitations. (R.28-29, 40, 46.)

-22-

relied on vocational expert testimony and substantial evidence exists in the record to support her finding that Rios is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (R.24.)

## V.    Conclusion

For the reasons detailed above, the Court concludes that the ALJ possessed substantial evidence in support of her decision, and did not err in concluding, based on the entire record of medical evidence, that, although Rios suffers from a severe mental impairment, he has the residual capacity to perform some jobs available in the national economy.

An appropriate order follows.